Eastern District of Kentucky
**FILED**
SEP 09 2022
AT LONDON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:22-CR-31-REW

UNITED STATES OF AMERICA            PLAINTIFF

V.        **PLEA AGREEMENT**

KEVIN GRUBB            DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1 and 3 of the Indictment, charging a violation of 18 U.S.C. §§ 371, 922(a)(3), and 924(a)(1)(D), conspiracy to transport firearms interstate, and a violation of 18 U.S.C. § 922(a)(1)(A), unlawful dealing in firearms. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 2 of the Indictment.

2. The essential elements of Count 1 are:

     (a) Two or more person conspired, or agreed, to commit the crime of transporting firearms interstate, that is, the willful receipt into a state in which a person resides a firearm that such person, not being licensed to deal or import firearms, purchased or otherwise obtained outside the person's state of residence; and

     (b) The defendant knowingly and voluntarily joined the conspiracy; and

     (c) A member of the conspiracy did one of the overt acts described in the Indictment for the purpose of advancing or helping the conspiracy.

3. The essential elements of Count 3 are:

    (a) The Defendant was not licensed to deal in firearms; and

    (b) The Defendant willfully engaged in the business of dealing in firearms.

4. As to the Counts 1 and 3 of the Indictment, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) From approximately July 2020 to April 2021, the Defendant conspired with Jonathan Statkiewicz, CC-2, and CC-1 to buy, sell, and transport firearms, with the ultimate object of the conspiracy being to transport firearms acquired in the Eastern District of Kentucky to CC-1 in Chicago, Illinois. CC-1 was a resident of Illinois and was not a resident of Kentucky. Among the Defendant, Statkiewicz, CC-1 and CC-2, none possessed a license to deal or import firearms. During this same period, the Defendant repeatedly bought and resold firearms for the principal objective of making profit, frequently using Facebook to conduct this business.

    (b) The Defendant repeatedly coordinated with CC-2 to acquire the types of firearms that CC-1 desired, knowing that the firearms would be resold and transported to CC-1 in Chicago, Illinois, a location he knew to have high demand for black-market firearms. The Defendant coordinated with Statkiewicz to transport firearms from CC-2 to the Defendant and to transport firearms to CC-1 in Chicago. The Defendant understood that CC-1 was illicitly reselling the firearms CC-1 received as a result of this conspiracy, and that was why the Defendant could routinely sell firearms to CC-1 at a higher price than what the Defendant paid for the firearms in Kentucky.

    (c) One of the overt acts the Defendant and his co-conspirators committed in furtherance of this conspiracy was the Defendant's purchase of a Smith & Wesson M&P 45 pistol bearing serial number DSY8948 from CC-2 and his direction to Statkiewicz to pick up that pistol from the CC-2 in Pulaski County on or about November 12, 2020. Law enforcement recovered that pistol from a suspect arrested in a Chicago suburb on November 16, 2020.

    (d) Another overt act the Defendant and his co-conspirators committed in furtherance of this conspiracy was the Defendant's purchase of a Springfield XD9 pistol bearing serial number BY529416 from CC-2 on or about March 8, 2021 and to direct Statkiewicz to pick up that pistol from CC-2 on or about March 9, 2021.

2

The Defendant further coordinated between Statkiewicz and CC-1 for the delivery of that pistol to CC-1 in Chicago. Law enforcement recovered that pistol after it was used in a shooting in Minneapolis, Minnesota in April 2021.

(e) On September 4, 2020, the Defendant told CC-2, via Facebook Messenger, in the middle of a conversation about firearms, that he "buy[s] sometimes 20k worth at a time." When CC-2 asked what the Defendant did for a living, the Defendant stated, "Buy sell trade."

5. The statutory punishment for Count 1 and Count 3 is, on each count, imprisonment for not more than 5 years, a fine of not more than $250,000, and a term of supervised release of not more than 3 years. A mandatory special assessment of $200 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

6. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) The most recent version of the United States Sentencing Guidelines (U.S.S.G.) manual at the time of sentencing will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 2K2.1(a)(7), the base offense level is 12.

(c) Pursuant to U.S.S.G. § 2K2.1(b)(1)(D), increase the offense level by 8 levels because the offense involved between 100 and 199 firearms.

(d) Pursuant to U.S.S.G. § 2K2.1(b)(5), increase the offense level by 4 levels because the Defendant engaged in the trafficking of firearms.

(e) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will

move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

7. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

9. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The United States will recommend releasing the Defendant on the current conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the

Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees

that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

14. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 9/9/2022      By: [signature]

Gregory Rosenberg
Assistant United States Attorney

Date: 9-9-22

*Kevin Grubb* (signature)

Kevin Grubb
Defendant

Date: 9-9-22

*Conrad Cessna* (signature)

Conrad Cessna
Attorney for Defendant